The **HOLMES GROUP, INC.,** Plaintiff,

v.

**VORNADO AIR CIRCULATION SYSTEMS, INC.,**
Defendant.

**No. 99–1499–WEB.**

United States District Court,
D. Kansas.

March 8, 2000.

Jay F. Fowler, Jim H. Goering, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Wichita, KS, James W. Dabney, Pennie & Edmonds LLP, New York City, for Plaintiff.

Kent A. Meyerhoff, Fleeson, Gooing, Coulson & Kitch, L.L.C., Edward L. Brown, Jr., Wichita, KS, Jeffrey D. Karceski, Lisa A. Dunner, Peter W. Gowdey, Lynn E. Eccleston, Samuel P. Burkholder, Pillsbury, Madison & Sutro, L.L.P., Washington, DC, for Defendant.

*Memorandum and Order*

WESLEY E. BROWN, Senior District Judge.

Plaintiff Holmes Group Inc. filed this action seeking, among other things, a declaratory judgment holding that Holmes'

sale of its fan and heater products does not infringe any valid or enforceable "trade dress" claimed by defendant Vornado under 15 U.S.C. §§ 1501 et seq. The matter is now before the court on Holmes' motion for summary judgment on its first cause of action seeking the aforementioned relief. Holmes argues it is entitled to summary judgment by virtue of the collateral estoppel effect of previous litigation involving defendant Vornado and another fan manufacturer. The court heard preliminary arguments from the parties relating to this issue at a hearing on January 3, 2000, and concludes that further argument would not assist in deciding the questions presented.

## I. *Facts.*

1. Holmes is a manufacturer of branded consumer household products. Holmes manufactures and sells a wide variety of household fan and heater products in U.S. interstate commerce, including the Holmes® Model HAOF–90 BlizzardTM Oscillating Power Table Fan; the Holmes® Model HFH 298 Power AccutempTM Bedroom Heater; and the Holmes® Model HFH 299 Power Heater.

2. Defendant Vornado is a competitor of Holmes in the U.S. fan and heater business. Vornado sells household fan and heater products, some of which incorporate arcuate vane structures exemplified in Exhibits 11 and 12 of the declaration of James W. Dabney.

3. On or about November 26, 1999, Vornado lodged a complaint with an administrative agency in Washington, D.C., known as the International Trade Commission (the "ITC"). In its ITC complaint, Vornado claimed to be the owner of a "trade dress" comprised of a "spiral grill design" embodied in certain Vornado fan and heater products, and asserted that Holmes' sale of the Holmes products essentially infringed that trade dress in alleged violation of 15 U.S.C. § 1125(a).

4. In its answer in this action dated December 30, 1999, defendant interposed an affirmative defense which substantially repeated the trade dress allegations contained in the ITC complaint. Defendant's answer in this action alleges that the spiral grill design embodied in certain Vornado fan and heater products constitutes non-functional trade dress and that Holmes' sale of the Holmes Products infringes that trade dress in violation of 15 U.S.C. § 1125(a).

5. The trade dress which defendant has accused Holmes of infringing in this action and in the ITC complaint, exemplified by the grill structure incorporated in the Vornado Model 550G "compact" fan depicted in Exhibit 5 to defendant's ITC complaint, is the exact same mechanical configuration which the Tenth Circuit has explicitly held "cannot be protected as trade dress" in Vornado I.

6. On November 6, 1992, Vornado commenced an action in this court entitled *Vornado Air Circulation Systems, Inc. v. Duracraft Corp.,* Civ. Action No. 92–1453–WEB (D.Kan.). Vornado's complaint asserted that the aforementioned "spiral grill design", which Vornado then referred to as the "Patented AirTensityTM Grill", constituted non-functional trade dress subject to regulation and injunction under 15 U.S.C. § 1125(a).

7. On July 5, 1995, the Tenth Circuit rendered a judgment reported at 58 F.3d 1498 which rejected defendant's trade dress claim and concluded:

> Vornado included the arcuate grill van structure as an element of its patent claims and described the configuration as providing an "optimum air flow." Then, after the first patent issued and Vornado subsequently found evidence that other grill structures worked as well or better than the spiral grill, Vornado did not repudiate or disclaim in any way the grill element of its patent. Instead, Vornado sought and received a reissued patent that expanded its claims with respect to the grill.
>
> Even if we discount entirely Vornado's extensive advertising campaign em-

phasizing the importance of the "Air-Tensity Grill," this patent history on its face obviates any need for a remand on the question of inventive significance. We simply take Vornado at its word. Because the "Patented AirTensity Grill" is a significant inventive element of Vornado's patented fans, it cannot be protected as trade dress.

The Tenth Circuit opinion reversed this court's initial ruling in favor of Vornado. *See Vornado Air Circulation Systems, Inc. v. Duracraft Corp.,* 1994 WL 1064319 (D.Kan., Mar.4, 1994).

8. On January 8, 1996, the Supreme Court of the United States denied a petition by Vornado for review of the Tenth Circuit's *Vornado I* decision. This court subsequently entered final judgment dismissing with prejudice, on the merits, the trade dress claim which Vornado had asserted in *Vornado I,* and awarded costs against Vornado.

9. In *Vornado I,* the Tenth Circuit specifically considered and decided the issue of whether the arcuate or "spiral" grill configuration embodied in Vornado fan and heater products was eligible for protection as trade dress under 15 U.S.C. § 1125(a). By its complaint in the ITC and its affirmative defense in this action, defendant seeks to re-litigate the very same issue, which was actually, necessarily, and finally decided adversely to defendant in *Vornado I.*

## II. *Summary Judgment Standards.*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law. *Id.*

## III. *Arguments.*

Holmes argues that under the doctrine of collateral estoppel the judgment in *Vornado I* bars Vornado from asserting in this action that the configuration of its "Air-Tensity Grill" qualifies for trade dress protection under 15 U.S.C. § 1125(a). As such, Holmes contends it is entitled to summary judgment on its claim for a declaratory judgment of non-infringement. In response, Vornado contends that collateral estoppel should not be applied because there has been a fundamental change in the controlling law, and because application of the doctrine in this case would be unfair to Vornado.

## IV. *Discussion.*

■ The federal courts have traditionally adhered to the doctrine of collateral estoppel. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under that doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* The doctrine furthers several important interests: it relieves parties of the cost and vexation of multiple lawsuits, it conserves judicial resources, and, by preventing inconsistent decisions, it encourages reliance on adjudication. *Id.* The Supreme Court has recently reaffirmed the benefits of collateral estoppel and has applied it in contexts not recognized at common law. For example, the Court has eliminated the requirement of "mutuality" of parties and has permitted a litigant not a party to a federal case to assert the doctrine "offensively" in a new federal suit against the party who lost on the issue in the first case. *Id.* at 94–95, 101 S.Ct. 411.

■ The elements of collateral estoppel are clearly satisfied in this case.[1] The only

---

1. The trade dress now claimed by Vornado is    identical to that which it asserted in *Vornado*

real question is whether the doctrine should not be applied because of a change in the law since *Vornado I*. It is well established that an intervening change in the law can be a sufficient basis for declining to apply collateral estoppel. *See e.g., Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Spradling v. City of Tulsa,* 198 F.3d 1219, 1223 (10th Cir.2000); *Bingaman v. Dept. Of Treasury,* 127 F.3d 1431, 1437 (Fed.Cir. 1997) ("In a number of cases, this court and others have held that a significant change in the 'legal atmosphere'—whether in the form of new legislation, a new court decision, or even a new administrative ruling—can justify a later court's refusal to give collateral estoppel effect to an earlier decision.").

■ Vornado contends this "change in the law" exception is met because in *Midwest Industries, Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356 (Fed.Cir.1999), the Federal Circuit expressly rejected the Tenth Circuit's *Vornado I* holding, ruling instead that a claim for trade dress protection was not barred by the fact that a product configuration had been claimed as a significant inventive element of a patent. *Id.* at 1364. As part of its ruling in that case, the Federal Circuit abandoned its prior practice of applying regional circuit law on questions involving the relationship between patent law and other federal law rights, and said that "[h]enceforth, will apply our own law to such questions." *Id.* at 1359. This alteration is potentially significant in the instant case, because Vornado has asserted a counterclaim alleging infringement of Vornado's patent. Under 28 U.S.C. § 1295(a)(1), the Federal Circuit

has exclusive jurisdiction over an appeal from a final judgment of a district court if the district court's jurisdiction is based in whole or in part on a patent claim. Thus, it is possible (although not entirely certain) that any appeal of this court's judgment will be to the Federal Circuit[2], and that the Federal Circuit will apply its own law to the trade dress claim—a law that is now clearly at odds with the Tenth Circuit law underlying the judgment in *Vornado I*. By contrast, if the case is found not to involve a claim under the patent laws, an appeal would go to the Tenth Circuit, which would presumably apply the same rule expressed in *Vornado I* to bar Vornado's claim of trade dress. *See* 15 U.S.C. § 1121(a).

The court concludes that this clear conflict in the substantive law of the circuits does not require, nor does it warrant, a refusal to apply the law of collateral estoppel in this action. In the prior case, Vornado had a full and fair opportunity to litigate its trade dress claim against another manufacturer, and that claim was ultimately decided against Vornado by the Tenth Circuit. Vornado petitioned the Supreme Court to review the ruling, but the Court declined to do so, leaving intact this court's resulting judgment that Vornado was barred from claiming trade dress rights in its grill design. The Tenth Circuit law upon which that judgment was based has not changed since *Vornado I*, and the court sees nothing to substantiate Vornado's hopeful speculation that if the Tenth Circuit were to revisit the issue "it would choose a different path than it articulated in *Vornado I*." Def. Mem. at 5. All of the procedural machinations and inter-circuit intrigue implicated by this action

---

I; *Vornado I* was decided on the merits; Vornado was a party to the prior action; and Vornado had a full and fair opportunity to litigate the issue in the prior action. *See Matosantos Commercial Corp. v. Applebee's Intern., Inc.,* 64 F.Supp.2d 1105, 1108 (D.Kan. 1999) (listing elements of collateral estoppel).

**2.** Holmes contends it is doubtful the Federal Circuit would have jurisdiction over an appeal in this case, citing the "well-pleaded

complaint rule" of *Christianson v. Colt Industries,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), and pointing out that Holmes' complaint asserts no patent claim. This court does not need to stray into this procedural thicket to decide the issue before it. Regardless of which Court of Appeals would have jurisdiction, the court determines that the principles of collateral estoppel should be applied in this case.

cannot obscure a central truth: *Vornado I* constitutes a final and valid judgment of this court and the law upon which that judgment was based remains unchanged. Under such circumstances, this court will not refuse to give effect to its own prior judgment.

■ Aside from an asserted change in the law, Vornado also points out that collateral estoppel should not be applied where it would result in unfairness to a defendant. *Citing Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). But the unfair circumstances identified by the Court in *Parklane Hosiery*—lack of incentive to prosecute the first action, inconsistency with other judgments in favor of the defendant, and lack of procedural opportunities in the first action—are clearly not present in this case. *Cf.* at 330. Vornado nevertheless argues unfairness would result because manufacturers against whom Vornado competes may be able to obtain trade dress protection on features of a type that Vornado is barred from protecting by *Vornado I.* Def. Mem. at 4. The *Restatement (Second) of Judgments* suggests that it might be inappropriate to apply collateral estoppel where its application "would impose on one of the parties a significant disadvantage, or confer on him a significant benefit, with respect to his competitors," or where it "would result in a manifestly inequitable administration of the

laws." *Restatement (Second) of Judgments,* § 28, comment c. Notwithstanding the fact that some inequality could emerge from the difference in law between the circuits, the court cannot agree that the circumstances of this case warrant re-litigation of the legal issue determined in *Vornado I.*[3]

As Holmes points out, conflict in the law between circuits is not unheard of, and the fact that one circuit disagrees with another does not necessarily mean the former would decline to give collateral estoppel effect to a judgment arising in the latter. But that is a matter for the Federal Circuit (or the Tenth Circuit) to determine. *Cf. Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir.1987) ("the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges"). Likewise, the ITC must determine in its own right whether the doctrine of collateral estoppel should apply to bar any of the claims now pending before it. Insofar as this action is concerned, however, this court previously entered a valid and final judgment in *Vornado I* and the Tenth Circuit law upon which that decision was based has not been changed. Under principles of collateral estoppel, the ruling in *Vornado I* bars Vornado from re-litigating the same issue in this action. Accordingly, Holmes is entitled as a matter of law to judgment declaring that it has not in-

---

**3.** As the *Restatement* points out, two concepts of equality are at odds with each other in this type of situation. One concept is that the outcomes of similar legal disputes between the same parties at different points in time should not be disparate. The other is that the outcomes of similar legal disputes being contemporaneously determined between different parties should be resolved according to the same legal standards. *See Restatement (Second) of Judgments,* § 28, comment c. In such a situation, "the choice must be made in terms of the importance of stability in the legal relationships between the immediate parties, the actual likelihood that there are similarly situated persons who are subject to application of the rule in question, and the consequences to the latter if they are subject to different legal treatment." *Id.*

Although the foregoing standards provide fodder for both sides of the collateral estoppel argument in this case, the court finds in them no compelling reason for declining to apply the same rule that was previously applied to the same issue in *Vornado I.* The court notes that since *Vornado I,* Holmes and other companies have manufactured various products in reliance upon the rule expressed in that case. *See Marino Decl.* ¶ 22. Failure to apply collateral estoppel here would likely create a baffling state of legal affairs insofar as manufacture of these products is concerned. *Cf. American Medical Intern., Inc. v. Secretary of Health, Education & Welfare,* 677 F.2d 118, 123 (the surest way to obtain decisional uniformity is to give estoppel effect to the earliest judgment).

fringed Vornado's asserted trade dress rights.

## V. *Vornado's Motion to Stay.*

The court has considered defendant Vornado's Motion to Stay (Doc. 53) pending a ruling by the Federal Circuit on Vornado's appeal of the preliminary injunction in this case, but the court concludes the motion should be denied. Given the straightforward question presented by the motion for summary judgment, the court does not believe judicial economy would be furthered by holding the motion in abeyance.

## VI. *Conclusion.*

Defendant Vornado's Motion to Stay (Doc. 53) is hereby DENIED.

Plaintiff Holmes' Motion for Summary Judgment on its first cause of action (Doc. 42) is hereby GRANTED.