## HOLMES GROUP, INC. *v.* VORNADO AIR CIRCULATION SYSTEMS, INC.

No. 01–408.   Argued March 19, 2002—Decided June 3, 2002

*James W. Dabney* argued the cause for petitioner. With him on the brief were *Paul Izzo, Timothy P. Gallogly, Arthur R. Miller, Marcia H. Sundeen,* and *Carol M. Wilhelm.*

*Peter W. Gowdey* argued the cause for respondent. With him on the brief were *Christopher P. Murphy, Janine A. Carlan, Kenneth W. Starr,* and *Daryl L. Joseffer.* *

JUSTICE SCALIA delivered the opinion of the Court.

In this case, we address whether the Court of Appeals for the Federal Circuit has appellate jurisdiction over a case in which the complaint does not allege a claim arising under federal patent law, but the answer contains a patent-law counterclaim.

I

Respondent, Vornado Air Circulation Systems, Inc., is a manufacturer of patented fans and heaters. In late 1992,

---

*\*David W. Long* filed a brief for the Patent, Trademark, and Copyright Section of the Bar Association of the District of Columbia as *amicus curiae.*

respondent sued a competitor, Duracraft Corp., claiming that Duracraft's use of a "spiral grill design" in its fans infringed respondent's trade dress. The Court of Appeals for the Tenth Circuit found for Duracraft, holding that Vornado had no protectable trade-dress rights in the grill design. See *Vornado Air Circulation Systems, Inc.* v. *Duracraft Corp.,* 58 F. 3d 1498 (1995) *(Vornado I).*

Nevertheless, on November 26, 1999, respondent lodged a complaint with the United States International Trade Commission against petitioner, The Holmes Group, Inc., claiming that petitioner's sale of fans and heaters with a spiral grill design infringed respondent's patent and the same trade dress held unprotectable in *Vornado I.* Several weeks later, petitioner filed this action against respondent in the United States District Court for the District of Kansas, seeking, *inter alia,* a declaratory judgment that its products did not infringe respondent's trade dress and an injunction restraining respondent from accusing it of trade-dress infringement in promotional materials. Respondent's answer asserted a compulsory counterclaim alleging patent infringement.

The District Court granted petitioner the declaratory judgment and injunction it sought. 93 F. Supp. 2d 1140 (Kan. 2000). The court explained that the collateral-estoppel effect of *Vornado I* precluded respondent from relitigating its claim of trade-dress rights in the spiral grill design. It rejected respondent's contention that an intervening Federal Circuit case, *Midwest Industries, Inc.* v. *Karavan Trailers, Inc.,* 175 F. 3d 1356 (1999), which disagreed with the Tenth Circuit's reasoning in *Vornado I,* constituted a change in the law of trade dress that warranted relitigation of respondent's trade-dress claim. The court also stayed all proceedings related to respondent's counterclaim, adding that the counterclaim would be dismissed if the declaratory judgment and injunction entered in favor of petitioner were affirmed on appeal.

Respondent appealed to the Court of Appeals for the Federal Circuit. Notwithstanding petitioner's challenge to its jurisdiction, the Federal Circuit vacated the District Court's judgment, 13 Fed. Appx. 961 (2001), and remanded for consideration of whether the "change in the law" exception to collateral estoppel applied in light of *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U. S. 23 (2001), a case decided after the District Court's judgment which resolved a Circuit split involving *Vornado I* and *Midwest Industries.* We granted certiorari to consider whether the Federal Circuit properly asserted jurisdiction over the appeal. 534 U. S. 1016 (2001).

## II

Congress vested the Federal Circuit with exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction *of that court* was based, in whole or in part, on [28 U. S. C. §] 1338 . . . ." 28 U. S. C. § 1295(a)(1) (emphasis added). Section 1338(a), in turn, provides in relevant part that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." Thus, the Federal Circuit's jurisdiction is fixed with reference to that of the district court, and turns on whether the action arises under federal patent law.[1]

Section 1338(a) uses the same operative language as 28 U. S. C. § 1331, the statute conferring general federal-question jurisdiction, which gives the district courts "original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." (Emphasis added.) We said in *Christianson* v. *Colt Industries Operat-*

---

[1] Like *Christianson* v. *Colt Industries Operating Corp.*, 486 U. S. 800, 814–815 (1988), this case does not call upon us to decide whether the Federal Circuit's jurisdiction is fixed with reference to the complaint as initially filed or whether an actual or constructive amendment to the complaint raising a patent-law claim can provide the foundation for the Federal Circuit's jurisdiction.

*ing Corp.*, 486 U. S. 800, 808 (1988), that "[l]inguistic consistency" requires us to apply the same test to determine whether a case arises under § 1338(a) as under § 1331.

The well-pleaded-complaint rule has long governed whether a case "arises under" federal law for purposes of § 1331.[2] See, *e. g., Phillips Petroleum Co.* v. *Texaco Inc.*, 415 U. S. 125, 127–128 (1974) *(per curiam).* As "appropriately adapted to § 1338(a)," the well-pleaded-complaint rule provides that whether a case "arises under" patent law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration . . . ." *Christianson,* 486 U. S., at 809 (internal quotation marks omitted). The plaintiff's well-pleaded complaint must "establis[h] either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law . . . ." *Ibid.* Here, it is undisputed that petitioner's well-pleaded complaint did not assert any claim arising under federal patent law. The Federal Circuit therefore erred in asserting jurisdiction over this appeal.

## A

Respondent argues that the well-pleaded-complaint rule, properly understood, allows a counterclaim to serve as the basis for a district court's "arising under" jurisdiction. We disagree.

---

[2] The well-pleaded-complaint rule also governs whether a case is removable from state to federal court pursuant to 28 U. S. C. § 1441(a), which provides in relevant part:

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

See *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1 (1983).

Admittedly, our prior cases have only required us to address whether a federal defense, rather than a federal counterclaim, can establish "arising under" jurisdiction. Nevertheless, those cases were decided on the principle that federal jurisdiction generally exists "only when a federal question is presented on the face of the *plaintiff's* properly pleaded complaint." *Caterpillar Inc.* v. *Williams,* 482 U. S. 386, 392 (1987) (emphasis added). As we said in *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22, 25 (1913), whether a case arises under federal patent law "cannot depend upon the answer." Moreover, we have declined to adopt proposals that "the answer as well as the complaint . . . be consulted before a determination [is] made whether the case 'ar[ises] under' federal law . . . ." *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.,* 463 U. S. 1, 10–11, n. 9 (1983) (citing American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1312, pp. 188–194 (1969)). It follows that a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for "arising under" jurisdiction. See, *e. g., In re Adams,* 809 F. 2d 1187, 1188, n. 1 (CA5 1987); *FDIC* v. *Elefant,* 790 F. 2d 661, 667 (CA7 1986); *Takeda* v. *Northwestern National Life Ins. Co.,* 765 F. 2d 815, 822 (CA9 1985); 14B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3722, pp. 402–414 (3d ed. 1998).

Allowing a counterclaim to establish "arising under" jurisdiction would also contravene the longstanding policies underlying our precedents. First, since the plaintiff is "the master of the complaint," the well-pleaded-complaint rule enables him, "by eschewing claims based on federal law, . . . to have the cause heard in state court." *Caterpillar Inc., supra,* at 398–399. The rule proposed by respondent, in contrast, would leave acceptance or rejection of a state forum to the master of the counterclaim. It would allow a

defendant to remove a case brought in state court under state law, thereby defeating a plaintiff's choice of forum, simply by raising a federal counterclaim. Second, conferring this power upon the defendant would radically expand the class of removable cases, contrary to the "[d]ue regard for the rightful independence of state governments" that our cases addressing removal require. See *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U. S. 100, 109 (1941) (internal quotation marks omitted). And finally, allowing responsive pleadings by the defendant to establish "arising under" jurisdiction would undermine the clarity and ease of administration of the well-pleaded-complaint doctrine, which serves as a "quick rule of thumb" for resolving jurisdictional conflicts. See *Franchise Tax Bd., supra,* at 11.

For these reasons, we decline to transform the long-standing well-pleaded-complaint rule into the "well-pleaded-complaint-*or-counterclaim* rule" urged by respondent.

### B

Respondent argues, in the alternative, that even if a counterclaim generally cannot establish the original "arising under" jurisdiction of a district court, we should interpret the phrase "arising under" differently in ascertaining the Federal Circuit's jurisdiction. In respondent's view, effectuating Congress's goal of "promoting the uniformity of patent law," Brief for Respondent 21, requires us to interpret §§ 1295(a)(1) and 1338(a) to confer exclusive appellate jurisdiction on the Federal Circuit whenever a patent-law counterclaim is raised.[3]

---

[3] Echoing a variant of this argument, JUSTICE GINSBURG contends that "giv[ing] effect" to Congress's intention "to eliminate forum shopping and to advance uniformity in . . . patent law" requires that the Federal Circuit have exclusive jurisdiction whenever a patent claim was "actually adjudicated." *Post,* at 840 (opinion concurring in judgment). We rejected precisely this argument in *Christianson,* viz., the suggestion that the Federal

We do not think this option is available. Our task here is not to determine what would further Congress's goal of ensuring patent-law uniformity, but to determine what the words of the statute must fairly be understood to mean. It would be difficult enough to give "arising under" the meaning urged by respondent if that phrase appeared in § 1295(a)(1)—the jurisdiction-conferring statute—*itself.* Cf. Economic Stabilization Act of 1970, § 211(b)(2), 85 Stat. 749 (providing the Temporary Emergency Court of Appeals with exclusive jurisdiction over appeals "in cases and controversies arising under this title"). Even then the phrase would not be some neologism that might justify our adverting to the general purpose of the legislation, but rather a term familiar to all law students as invoking the well-pleaded-complaint rule. Cf. *Coastal States Marketing, Inc.* v. *New England Petroleum Corp.,* 604 F. 2d 179, 183 (CA2 1979) ("The use of the phrase 'cases and controversies arising under' . . . is strong evidence that Congress intended to borrow the body of decisional law that has developed under 28 U. S. C. § 1331 and other grants of jurisdiction to the district courts over cases 'arising under' various regulatory statutes"). But the present case is even weaker than that, since § 1295(a)(1) does not itself *use* the term, but rather refers to jurisdiction under § 1338, where it is well established that "arising under any Act of Congress relating to patents" invokes, specifically, the well-pleaded-complaint rule. It would be an unprecedented feat of interpretive necromancy to say that § 1338(a)'s "arising under" language means one thing (the well-pleaded-complaint rule) in its own right,

---

Circuit's jurisdiction is "fixed 'by reference to the case actually litigated.'" 486 U. S., at 813 (quoting Brief for Respondent in *Christianson* v. *Colt Industries Operating Corp.,* O. T. 1987, No. 87–499, p. 31). We held that the Federal Circuit's jurisdiction, like that of the district court, "is determined by reference to the well-pleaded complaint, not the well-tried case." 486 U. S., at 814.

but something quite different (respondent's complaint-or-counterclaim rule) when referred to by § 1295(a)(1).[4]

\* \* \*

Not all cases involving a patent-law claim fall within the Federal Circuit's jurisdiction. By limiting the Federal Circuit's jurisdiction to cases in which district courts would have jurisdiction under § 1338, Congress referred to a well-established body of law that requires courts to consider whether a patent-law claim appears on the face of the plaintiff's well-pleaded complaint. Because petitioner's complaint did not include any claim based on patent law, we vacate the judgment of the Federal Circuit and remand the case with instructions to transfer the case to the Court of Appeals for the Tenth Circuit. See 28 U. S. C. § 1631.

*It is so ordered.*

JUSTICE STEVENS, concurring in part and concurring in the judgment.

The Court correctly holds that the exclusive jurisdiction of the Court of Appeals for the Federal Circuit in patent

---

[4] Although JUSTICE STEVENS agrees that a correct interpretation of § 1295(a)(1) does not allow a patent-law counterclaim to serve as the basis for the Federal Circuit's jurisdiction, he nevertheless quibbles that "there is well-reasoned precedent" supporting the contrary conclusion. See *post,* at 835 (opinion concurring in part and concurring in judgment). There is not. The cases relied upon by JUSTICE STEVENS and by the court in *Aerojet-General Corp.* v. *Machine Tool Works, Oerlikon-Buehrle Ltd.,* 895 F. 2d 736 (CA Fed. 1990), simply address whether a district court can retain jurisdiction over a counterclaim if the complaint (or a claim therein) is dismissed or if a jurisdictional defect in the complaint is identified. They do not even mention the well-pleaded-complaint rule that the statutory phrase "arising under" invokes. Nor do any of these cases interpret § 1295(a)(1) or another statute conferring appellate jurisdiction with reference to the jurisdiction of the district court. Thus, the cases relied upon by JUSTICE STEVENS have no bearing on whether the phrase "arising under" can be interpreted differently in ascertaining the jurisdiction of the Federal Circuit than that of the district court.

cases is "fixed with reference to that of the district court," *ante*, at 829. It is important to note the general rule, however, that the jurisdiction of the court of appeals is not "fixed" until the notice of appeal is filed. See *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 58–59 (1982) *(per curiam)* ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").

Thus, if a case began as an antitrust case, but an amendment to the complaint added a patent claim that was pending or was decided when the appeal is taken, the jurisdiction of the district court would have been based "in part" on 28 U. S. C. § 1338(a), and therefore § 1295(a)(1) would grant the Federal Circuit jurisdiction over the appeal. Conversely, if the only patent count in a multicount complaint was voluntarily dismissed in advance of trial, it would seem equally clear that the appeal should be taken to the appropriate regional court of appeals rather than to the Federal Circuit. See *Christianson* v. *Colt Industries Operating Corp.*, 486 U. S. 800, 823–824 (1988) (STEVENS, J., concurring). Any other approach "would enable an unscrupulous plaintiff to manipulate appellate court jurisdiction by the timing of the amendments to its complaint." *Id.*, at 824. To the extent that the Court's opinion might be read as endorsing a contrary result by reason of its reliance on cases involving the removal jurisdiction of the district court, I do not agree with it.

I also do not agree with the Court's statement that an interpretation of the "in whole or in part" language of § 1295(a)(1) to encompass patent claims alleged in a compulsory counterclaim providing an independent basis for the district court's jurisdiction would be a "neologism" that would involve "an unprecedented feat of interpretive necromancy," *ante*, at 833. For there is well-reasoned precedent supporting precisely that conclusion. See *Aerojet-General Corp.* v.

*Machine Tool Works, Oerlikon-Buehrle Ltd.*, 895 F. 2d 736, 742–743 (CA Fed. 1990) (en banc) (opinion of Markey, C. J., for a unanimous court) (citing, *e. g., Rengo Co.* v. *Molins Machine Co.*, 657 F. 2d 535, 539 (CA3 1981); *Dale Electronics, Inc.* v. *R. C. L. Electronics, Inc.*, 488 F. 2d 382, 390 (CA1 1973); *Pioche Mines Consol., Inc.* v. *Fidelity-Philadelphia Trust Co.*, 206 F. 2d 336, 336–337 (CA9 1953); *Lion Mfg. Corp.* v. *Chicago Flexible Shaft Co.*, 106 F. 2d 930, 933 (CA7 1939)).[1] I am nevertheless persuaded that a correct interpretation of § 1295(a)(1) limits the Federal Circuit's exclusive jurisdiction to those cases in which the patent claim is alleged in either the original complaint or an amended pleading filed by the

---

[1] The Court dismisses the cases cited in *Aerojet*, a unanimous opinion for an en banc Federal Circuit, as having "no bearing" on this case because they do not parse the term "arising under" or interpret 28 U. S. C. § 1295(a)(1). *Ante*, at 834, n. 4. But surely it is not a "quibbl[e]" to acknowledge them as supporting the *Aerojet* court's conclusion that the jurisdiction of the district court can be based on a patent counterclaim, thereby satisfying the "in whole or in part" requirement of § 1295(a)(1).

In any event, the assertion that only the power of black magic could give "arising under" a different meaning with respect to appellate jurisdiction is belied by case law involving the Temporary Emergency Court of Appeals (TECA), which had exclusive jurisdiction over appeals in cases "arising under" the Economic Stabilization Act of 1970 (ESA), § 211(b)(2), 85 Stat. 749. Most courts departed from the traditional understanding of "arising under" and interpreted the statute to grant TECA appellate jurisdiction over ESA issues, including those raised as a defense. Courts nevertheless interpreted the statute's identical language respecting the district courts to grant traditional "arising under" jurisdiction. See *Coastal States Marketing, Inc.* v. *New England Petroleum Corp.*, 604 F. 2d 179, 185–186 (CA2 1979) ("It must be candidly recognized that according the TECA some form of 'issue' jurisdiction places on the phrase, 'cases and controversies arising under,' . . . a construction that differs from the meaning associated with these words in other jurisdictional statutes, and differs even from the grant of jurisdiction to the district courts in [the ESA]"). Thus, although I am in agreement with the Court's ultimate decision not to determine appellate jurisdiction by reference to the defendant's patent counterclaim, I find it unnecessary and inappropriate to slight the contrary reasoning of the Court of Appeals.

plaintiff. In my judgment, each of the three policies that the Court has identified as supporting the "well-pleaded-complaint" rule governing district court jurisdiction, *ante*, at 831–832, points in the same direction with respect to appellate jurisdiction.

First, the interest in preserving the plaintiff's choice of forum includes not only the court that will conduct the trial but the appellate court as well. A plaintiff who has a legitimate interest in litigating in a circuit whose precedents support its theory of the case might omit a patent claim in order to avoid review in the Federal Circuit. In some cases that interest would be defeated by a rule that allowed a patent counterclaim to determine the appellate forum.

Second, although I doubt that a rule that enabled the counterclaimant to be the occasional master of the appellate forum "would radically expand" the number of cases heard by the Federal Circuit, *ante*, at 832, we must recognize that the exclusive jurisdiction of the Federal Circuit defined in § 1295(a)(1) does not comprise claims arising under the trademark and copyright laws, which are included in the district court's grant of jurisdiction under § 1338(a).[2] As the instant litigation demonstrates, claims sounding in these other areas of intellectual property law are not infrequently bound up with patent counterclaims. The potential number of cases in which a counterclaim might direct to the Federal Circuit appeals that Congress specifically chose not to place within its exclusive jurisdiction is therefore significant.

Third, the interest in maintaining clarity and simplicity in rules governing appellate jurisdiction will be served by lim-

---

[2] The statute grants the Federal Circuit "exclusive jurisdiction . . . if the jurisdiction of [the district] court was based, in whole or in part, on [28 U. S. C.] section 1338 . . . , except that a case involving a claim arising under any Act of Congress relating to copyrights, exclusive rights in mask works, or trademarks and no other claims under section 1338(a) shall be governed" by provisions relating to appeals to the regional courts of appeals. 28 U. S. C. § 1295(a)(1).

iting the number of pleadings that will mandate review in the Federal Circuit. In his opinion in *Aerojet*, Chief Judge Markey merely held that a counterclaim for patent infringement that was "compulsory" and not "frivolous" or "insubstantial" sufficed to establish jurisdiction; he made a point of noting that there was no assertion in the case that the patent counterclaim at issue had been filed "to manipulate the jurisdiction of [the Federal Circuit]." 895 F. 2d, at 738. The text of the statute, however, would not seem to distinguish between that counterclaim and those that are permissive, insubstantial, or manipulative, and there is very good reason not to make the choice of appellate forum turn on such distinctions. Requiring assessment of a defendant's motive in raising a patent counterclaim or the counterclaim's relative strength wastes judicial resources by inviting "unhappy interactions between jurisdiction and the merits." *Kennedy* v. *Wright*, 851 F. 2d 963, 968 (CA7 1988).

There is, of course, a countervailing interest in directing appeals in patent cases to the specialized court that was created, in part, to promote uniformity in the development of this area of the law. But we have already decided that the Federal Circuit does not have exclusive jurisdiction over all cases raising patent issues.[3] *Christianson*, 486 U. S., at

---

[3] In explicit contrast with the TECA, see n. 1, *supra*, the Federal Circuit was granted appellate jurisdiction over cases involving patent law claims, not issues. See *Christianson* v. *Colt Industries Operating Corp.*, 486 U. S. 800, 820–821, n. 1 (1988) (STEVENS, J., concurring) (quoting H. R. Rep. No. 97–312, p. 41 (1981)) ("Cases will be within the jurisdiction of the Court of Appeals for the Federal Circuit in the same sense that cases are said to 'arise under' federal law for purposes of federal question jurisdiction. *Contrast, Coastal States Marketing, Inc.* v. *New England Petroleum Corp.*, 604 F. 2d 179 (2d Cir., 1979) [Temporary Emergency Court of Appeals properly has jurisdiction over *issues*, not *claims*, arising under the Economic Stabilization Act]" (internal quotation marks omitted)).

Considerations of convenience to the parties and the courts support Congress' decision to determine the Federal Circuit's appellate jurisdiction based on the claims alleged in the well-pleaded complaint rather than the issues resolved by the district court's judgment. If, for example, the dis-

811–812. Necessarily, therefore, other circuits will have some role to play in the development of this area of the law. An occasional conflict in decisions may be useful in identifying questions that merit this Court's attention. Moreover, occasional decisions by courts with broader jurisdiction will provide an antidote to the risk that the specialized court may develop an institutional bias.[4]

In sum, I concur in the Court's judgment and join Parts I and II–A of its opinion.

JUSTICE GINSBURG, with whom JUSTICE O'CONNOR joins, concurring in the judgment.

For reasons stated by Chief Judge Markey, writing for a unanimous en banc Federal Circuit in *Aerojet-General Corp. v. Machine Tool Works, Oerlikon-Buehrle Ltd.*, 895 F. 2d 736 (1990), I conclude that, when the claim stated in a compulsory counterclaim "aris[es] under" federal patent law and is adjudicated on the merits by a federal district court, the Federal Circuit has exclusive appellate jurisdiction over that adjudication and other determinations made in the same case. See *id.*, at 741–744 (distinguishing *Christianson* v. *Colt Industries Operating Corp.*, 486 U. S. 800 (1988), in which this Court *affirmed* the jurisdictional decision of the Federal Circuit; in discussing the "well-pleaded complaint rule," the Federal Circuit observed that a patent infringe-

---

trict court's judgment rests on multiple grounds, directing the appeal is a relatively straightforward matter by reference to the complaint. As Judge Easterbrook explains in *Kennedy* v. *Wright*, 851 F. 2d 963 (CA7 1988), fixing appellate jurisdiction with respect to the complaint also ensures that a case that has been appealed and remanded will return to the same appellate court if there is a subsequent appeal. *Id.*, at 968 (describing the risk of "a game of jurisdictional ping-pong" if subsequent appeals are directed based on the grounds for decision rather than the pleadings).

[4] See Dreyfuss, The Federal Circuit: A Case Study in Specialized Courts, 64 N. Y. U. L. Rev. 1, 25–30, 54 (1989) (evaluating criticism that the Federal Circuit demonstrates a greater pro-patent bias than regional circuits).

ment counterclaim, unlike a patent issue raised only as a defense, has as its own, independent jurisdictional base 28 U. S. C. § 1338, *i. e.,* such a claim discretely "arises under the patent laws").

The question now before this Court bears not at all on a plaintiff's choice of trial forum. The sole question presented here concerns Congress' allocation of adjudicatory authority among the federal courts of appeals. At that appellate level, Congress sought to eliminate forum shopping and to advance uniformity in the interpretation and application of federal patent law. See generally Dreyfuss, The Federal Circuit: A Case Study in Specialized Courts, 64 N. Y. U. L. Rev. 1, 30–37 (1989).

The Court's opinion dwells on district court authority. See *ante,* at 829–832. But, all agree, Congress left that authority entirely untouched. I would attend, instead, to the unique context at issue, and give effect to Congress' endeavor to grant the Federal Circuit exclusive appellate jurisdiction at least over district court adjudications of patent claims. See Dreyfuss, *supra,* at 36.

In the instant case, however, no patent claim was actually adjudicated. For that sole reason, I join the Court's judgment.