COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued at Williamsburg, Virginia

PUBLISHED

ELEANOR A. HUNTER, INDIVIDUALLY
  AND AS A TRUSTEE OF THE THIRD
  AMENDED AND RESTATED
  THERESA E. HUNTER REVOCABLE
  LIVING TRUST AGREEMENT,
  SECOND AMENDED AND RESTATED
  CHARLES M. HUNTER REVOCABLE
  LIVING TRUST AGREEMENT AND
  SHANNON BRODRICK HUNTER TRUST

                                                    OPINION BY
v.       Record No. 0555-22-1              JUDGE STUART A. RAPHAEL
                                                    MAY 2, 2023
CHARLES M. HUNTER, JR.


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Charles J. Maxfield, Judge Designate

George H. Bowles (Daniel R. Quarles; Williams Mullen; Otey
Smith & Quarles, Attorneys, on briefs), for appellant.

William W. Sleeth III (Brett C. Herbert; Gordon Rees Scully
Mansukhani, LLP, on brief), for appellee.


Charles (Chip) Hunter, Jr. filed a complaint accusing his sister, Eleanor Hunter, of

obtaining certain gifts from their parents through undue influence or fraud, thereby depleting

their parents' trusts and eroding Chip's inheritance. Chip fashioned his complaint according to

the "alternative-pleading model," a method of bringing a declaratory-judgment action that our

Supreme Court recently approved in *Hunter v. Hunter* (*Hunter I*), 298 Va. 414 (2020). The

alternative-pleading model permits a plaintiff to ask a trial court to determine whether the claims

set forth in the complaint would violate a no-contest provision in a trust instrument (or a will)

before the plaintiff litigates those claims.

The trial court granted the declaratory judgment, finding that the claims in Chip's complaint would not violate the no-contest clause in his mother's trust agreement. The trial court certified that ruling for interlocutory appeal, finding under Code § 8.01-675.5(A) that the order involved a dispositive question of law for which there is a substantial ground for difference of opinion and no clear, controlling precedent from our Supreme Court or this Court. We granted Eleanor's petition for appeal and now affirm.

BACKGROUND

*A. The Trusts*

Charles and Theresa Hunter had two children, Chip and Eleanor. In 2010, Charles executed the Second Amended and Restated Charles M. Hunter Revocable Living Trust ("Charles Trust"). Article V of the Charles Trust designated Charles as the initial trustee and, if he could not serve, Theresa and Eleanor as substitute co-trustees. Article II of the Charles Trust provided that if Theresa survived Charles, all the assets of the Charles Trust would be distributed to her outright.

In 2011, Theresa executed the Third Amended and Restated Theresa E. Hunter Revocable Living Trust ("Theresa Trust"). Article IV of the Theresa Trust designated Theresa and Eleanor as initial trustees. If Theresa could not serve, Eleanor would serve as the sole trustee. Article II of the Theresa Trust provided that upon Theresa's passing, if Charles predeceased her, the assets of the trust would be divided into three shares to be distributed as follows: one-third to Chip, minus $87,650; one-half of the remaining trust assets to Eleanor; and the other half to the Shannon Brodrick Hunter Trust (benefitting Eleanor's daughter, Shannon). Eleanor began serving as the trustee of both the Charles Trust and the Theresa Trust in 2012. Charles died in 2013, and Theresa died in 2015.

- 2 -

Both trusts contained a "no contest" provision. Because Charles predeceased Theresa, the Theresa Trust's no-contest provision is most relevant here. Article V of the Theresa Trust provided in part:

> A beneficiary's [interest under this Trust Agreement] shall be revoked if such beneficiary:
>
> > (1) Contests any provision of this Trust Agreement;
> > (2) Contests my Will or any codicil thereto;
> > (3) Contests any decision of my Trustee to make or withhold a discretionary distribution under this Trust; [or]
> > (4) Files an action, petition or a lawsuit of any kind in any court against any beneficiary or fiduciary under this Trust Agreement for breach of his or her fiduciary duty to me, to my husband, or to the beneficiary of any trust established pursuant to this Trust Agreement, as a result of actions taken by such beneficiary or fiduciary during my lifetime.

Following Theresa's death, Chip received a Morgan Stanley Consolidated Account Statement revealing that the trust's assets decreased from approximately $4.25 million in December 2009 to approximately $1.7 million in September 2015. Suspicious that Eleanor's wrongdoing accounted for that reduction, Chip initiated this declaratory-judgment action.

### B. *Hunter I*

This is not the first dispute between Chip and Eleanor to make its way through our courts. Their first foray resulted in the Supreme Court's 2020 opinion in *Hunter I*, 298 Va. at 414. That dispute stemmed from Eleanor's refusal to provide Chip certain information related to the steep decline in value of the trust assets over a six-year period. *Id.* at 420. Eleanor interpreted a trust provision to permit her, as trustee, to withhold that information, and Chip filed a declaratory-judgment action seeking a contrary interpretation. *Id.* He divided his complaint into two counts: Count II set out the substantive claim arguing for a favorable interpretation of the disputed trust provision, and "Count I stated that the court should consider the request in Count II 'if, and only if,' the court interpreted the no-contest provision to be inapplicable." *Id.* at 421.

- 3 -

The Supreme Court held that Chip successfully avoided the risk of forfeiture under the no-contest provision by employing the "alternative-pleading model." The Court relied in part on *Virginia Foundation of Independent Colleges v. Goodrich*, 246 Va. 435 (1993), in which the plaintiff's complaint contained two counts, the first of which resembled Chip's Count I. *Id.* at 437. Although the Court in *Goodrich* did not explicitly comment on the two-step pleading method, it ruled that the plaintiff's substantive claim did not violate the no-contest clause. *Id.* at 439. *Hunter I* characterized that holding as "[i]mplicitly approving [a] beneficiary's use of alternative pleading." 298 Va. at 428. The Court then took the opportunity to give its "express approval to the alternative-pleading model." *Id.* at 429.

"The alternative-pleading model has the virtue of principle by conforming to the traditional view that the complainant is 'the master of the complaint,' and the value of pragmatism by permitting a declaratory judgment action to gauge the cost-benefit ratio of continuing litigation." *Id.* (citation omitted) (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)). By "closely follow[ing] the *Goodrich* template for seeking a preliminary determination on the scope of the no-contest provision of the Theresa Trust prior to a resolution of the disputed . . . [trust] provision," *id.*, Chip avoided triggering the no-contest clause, *id.* at 437. That enabled the trial court to answer the question posed in Count I before proceeding to Count II. *Hunter I* sets the stage for our discussion of the declaratory-judgment action at issue here.

*C. The 2019 Complaint*

In 2019, Chip filed a three-count complaint against Eleanor alleging that she procured certain "gifts" through undue influence or fraud perpetrated against their parents. As in *Hunter I*, Count I sought a declaratory judgment that litigating Chip's claims—set forth in Counts II and III—would not trigger the no-contest provision. "If, and only if" the trial court determined that

his claims would not trigger the no-contest provisions, then Chip asked the court to proceed to the merits of Counts II and III.

As for the merits of those claims, Chip alleged that the parents' gifts orchestrated by Eleanor "substantially depleted" Charles and Theresa's estates. The contested gifts included:

- $300,000 to Eleanor in July 2010;

- $400,000 to Eleanor in December 2010;

- $500,000 to Shannon's Trust in 2011;

- $200,000 to Eleanor in 2011; and

- $200,000 to Eleanor in 2012.

Chip sought to have the gifts returned to the trust corpus.

Eleanor filed a counterclaim alleging that the purported gifts listed in Chip's complaint were discretionary distributions made by her in her capacity as trustee, rather than gifts directed by her parents themselves. She claimed that, by seeking to set aside those discretionary distributions, Chip had triggered the no-contest clause.[1]

When the court proceeded to trial on Count I, Chip's only evidence was a copy of his complaint and the accompanying exhibits, including a copy of the Theresa Trust. The exhibits also included documents from Charles and Theresa's estate-planning attorney. Chip hinted that those documents would prove that the transfers were, in fact, gifts. But the trial court cut him off—noting that the documents were "not coming in here today because [they are] hearsay." Chip's attorney agreed, explaining that he offered those documents for the "very narrow purpose" of showing the basis for the complaint.

---

[1] Eleanor's counterclaim does not appear in the record, but Chip's demurrer to the counterclaim does. On appeal, Eleanor explains that her "Counterclaim sought a judicial declaration that by seeking to set aside . . . discretionary distributions Mr. Hunter had triggered the no-contest clause of the Theresa Trust."

In response to Eleanor's argument that the complaint itself was not evidence, the trial court explained: "for the purposes of today's hearing . . . it's almost like a demurrer; we're kind of saying this is the lawsuit, this is what he intends to prove. Does what he intends to prove violate the no-contest clause, right?" Eleanor's attorney disputed the demurrer analogy, arguing that, in "[a] demurrer hearing, all the facts alleged in his pleading are [assumed] true, and we're here for trial." But the trial court decided to admit the complaint and attached exhibits as "demonstrative evidence of what [Chip is] seeking to go forward on."

At the close of Chip's case, Eleanor moved to strike the evidence. She argued that "because there [was] no evidence before [the] court," the question of whether litigating Counts II and III would violate the no-contest clause was "incapable of being decided." The trial court denied her motion, and Eleanor declined to present any evidence.

Following closing arguments, the trial court ruled that the claims made in Chip's complaint did not run afoul of the no-contest clause. But the court recognized that its

> Order involve[d] a question of law as to which (i) there is substantial ground for difference of opinion; (ii) there is no clear, controlling precedent on point in the decisions of the Supreme Court of Virginia or the Court of Appeals of Virginia; (iii) determination of the issues will be dispositive of a material aspect of the proceeding currently pending before the Court; and (iv) it is in the parties' best interest to seek an interlocutory appeal.

So the court certified its order for interlocutory appeal under Code § 8.01-675.5(A), and Eleanor timely petitioned for appeal. We granted the petition and, following briefing and argument, the appeal is now ripe for decision.

ANALYSIS

Eleanor raises six assignments of error. She begins by arguing that the trial court improperly exercised its declaratory-judgment power because Chip failed to prove an actual

- 6 -

controversy.  And even if Chip successfully cleared that justiciability hurdle, Eleanor contests

the trial court's decision to grant the declaratory judgment.  We consider these claims in turn.

*A.  Chip alleged a justiciable controversy (Assignment of Error 1).*

Eleanor argues that Chip failed to prove an actual, justiciable controversy between the

parties on Count I because he did not establish that Eleanor had threatened that Chip's advancing

the claims made in Counts II and III would trigger the no-contest provision.  She argues that the

Declaratory Judgment Act, Code §§ 8.01-184 to -191, therefore prohibited the trial court from

reaching Count I of Chip's complaint.

Code § 8.01-184 defines the boundaries of a trial court's power to render declaratory

judgments:

> *In cases of actual controversy*, circuit courts within the scope of
> their respective jurisdictions shall have power to make binding
> adjudications of right, whether or not consequential relief is, or at
> the time could be, claimed and no action or proceeding shall be
> open to objection on the ground that a judgment order or decree
> merely declaratory of right is prayed for.

(Emphasis added).  The Act provides that it "is to be liberally interpreted and administered with

a view to making the courts more serviceable to the people."  Code § 8.01-191.

"The Declaratory Judgment Act created an intermediate tier of judicial power between

the open-gate response to fully accrued claims and the closed-gate response to anything less than

that." *Ames Ctr., L.C. v. Soho Arlington, LLC*, ___ Va. ___, ___ (Aug. 18, 2022).  "A

declaratory-judgment action, after all, was meant to authorize the assertion of cognizable claims

before they 'fully matured' and before the 'alleged wrongs have . . . been suffered.'" *Morgan v.

Bd. of Supervisors of Hanover Cnty.*, ___ Va. ___, ___ (Feb. 2, 2023) (alteration in original)

(quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42,

55 (2018)).

"The boundaries of this tier of justiciability, however, have well recognized limits." *Ames Ctr.*, ___ Va. at ___. The Act "does not authorize courts to 'render advisory opinions, to decide moot questions, or to answer inquiries that are merely speculative.'" *Id.* (quoting *USAA Cas. Ins. v. Randolph*, 255 Va. 342, 346 (1998)). Rather, courts may issue declaratory judgments only "in cases of actual controversy when there is an antagonistic assertion and denial of right." Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 3.10[A] (7th ed. 2020). That "limiting principle polices the boundaries of the 'constitutionally vested "judicial power"' authorized by Article VI, Section 1 of the Constitution of Virginia." *Ames Ctr.*, ___ Va. at ___ (quoting *Godlove v. Rothstein*, 300 Va. 437, 439 (2022)). The trial court must exercise judgment—that is, "perspicacity"—in determining "whether such danger [to one's legal rights] is hypothetical or imaginary only or whether it is actual and material." *Id.* (alteration in original) (quoting *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 335 (1983)).

The trial court did not err in exercising that judgment here because the risk to Chip's inheritance from pursuing his claims was not speculative or "imaginary," but "actual and material." *Id.* Chip claimed—and Eleanor did not deny—that Eleanor had tried to use the no-contest clause to disinherit Chip no fewer than three times before he filed the 2019 complaint. *Hunter I* arrived at the Supreme Court following the trial court's grant of Eleanor's motion for summary judgment that Chip had violated the no-contest provision. 298 Va. at 419.[2] Before filing his complaint here, Chip had been entangled in legal battles with Eleanor for years. Whenever Chip questioned her conduct, Eleanor claimed that he had triggered the no-contest clause. So Chip had good reason to think that this time would be no different. That belief was

---

[2] Another appeal remains pending in this Court in which Eleanor continues to argue that arguments made by Chip while litigating *Hunter I* violated the no-contest clause. *See* Opening Brief of Appellant, *Hunter v. Hunter*, No. 1087-22-1 (Va. Ct. App. Nov. 16, 2022).

reasonable and not "so speculative that the action [was] not ripe for adjudication." *Berry v. Bd. of Supervisors of Fairfax Cnty.*, ___ Va. ___, ___ (Mar. 23, 2023).[3]

In short, we find on these facts that an "actual controversy" existed between Chip and Eleanor as to whether Chip's proceeding on Counts II and III would violate the no-contest clause. His request for a declaratory judgment was therefore justiciable.

*B. The trial court properly granted the declaratory judgment (Assignments of Error 1-6).*

Eleanor argues that the declaratory judgment was improperly granted because Chip failed to meet his burden of proof. She says that the trial court relied on "essentially no facts or evidence" (Assignment of Error 1) and that it based its decision on "future or speculative" facts, events, or circumstances (Assignment of Error 2). She identifies two specific items that Chip failed to prove: "that the gifts he will seek to set aside were not discretionary distributions" (Assignment of Error 4) and "that the Complaint was not an action against the Trustee for breaches of fiduciary duty occurring during the lifetime of the settlors of the Trust" (Assignment of Error 6). Relatedly, she faults the trial court for "improperly absolv[ing] [Chip] of liability for future conduct violative of the no-contest clauses" (Assignment of Error 3). She also accuses Chip of engaging in improper procedural fencing (Assignment of Error 5).

We find none of these arguments persuasive.

*1. Chip met his burden of proof.*

"[T]he power to make a declaratory judgment is a discretionary one and must be exercised with care and caution." *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970).

---

[3] Given the parties' contentious history, it is difficult to see how Chip could have elicited Eleanor's position on the merits of this case *without* causing her to claim that he had thereby triggered the no-contest clause. Eleanor's attorney said at oral argument that Chip might simply have "stated what his position was to Eleanor before he filed suit." But when asked if Eleanor would have then claimed that Chip's doing so violated the no-contest clause, her attorney acknowledged, "she may have."

"One of the functions of pleadings in an action is to limit the issues and narrow the proofs."

*Eubank v. Spencer*, 203 Va. 923, 925 (1962). "In the paradigm civil case, . . . []the proponent of [an] issue simply must produce evidence sufficient to support a finding on that issue[], and the burden of persuasion is proof by a preponderance of the evidence." *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988); *see also* 26 C.J.S., *Declaratory Judgments* § 26 (2022) ("As is true in civil actions generally, the plaintiff in an action for a declaratory judgment must plead and prove facts which entitle them to the judgment sought."). To determine whether the trial court abused its discretion when it granted Chip's declaratory judgment, we must examine: (1) the scope of the judgment sought in Count I and (2) whether Chip pleaded and proved facts sufficient to satisfy his burdens of production and persuasion.

Like the trial court, we interpret Count I to request a ruling that the complaint, on its face, would not violate the no-contest clause. "The alternative-pleading model has the virtue of principle by conforming to the traditional view that the complainant is 'the master of the complaint.'" *Hunter I*, 298 Va. at 429 (quoting *Holmes Grp., Inc.*, 535 U.S. at 831). Count I of Chip's complaint states:

> Chip seeks a declaratory judgment that the relief sought in the
> Complaint would not fall within the scope of, and would not
> trigger the application of, the Charles Trust No Contest Clause, or
> the Theresa Trust No Contest Clause.

As the master of his complaint, Chip could define the bounds of his request in Count I. He did so narrowly. The complaint specifically lists five transfers and labels them "Purported Gifts," not trust distributions. It framed the action as one against Eleanor in her individual capacity and not as a claim alleging a breach of her fiduciary duty. And Count I did not ask the trial court to verify those characterizations; it asked only that the trial court declare "that the relief sought *in the Complaint*" would not violate the no-contest clause.

We disagree with Eleanor that Chip was required to present evidence in support of the allegations in the complaint in order to obtain a declaratory judgment that those allegations, if true, would not violate the no-contest provision. Chip's Exhibit 1 provided the trial court with sufficient information to rule on Count I. To determine whether the complaint, on its face, violated the no-contest clause, the trial court needed only to compare the two documents. Chip provided both, satisfying his burden of production.

We note that Eleanor has not disputed on appeal that Chip's allegations in Counts II and III of the complaint (assuming those allegations to be true) would not trigger the no-contest provision. Because she had the opportunity to present that argument here but declined to do so, the trial court's ruling on that point is now law of the case. *See, e.g.*, *Slusser v. Commonwealth*, 74 Va. App. 761, 778 (2022) ("Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." (quoting *Cromartie v. Billings*, 298 Va. 284, 306 (2020))).[4]

### 2. *The declaratory judgment does not absolve Chip of future violations.*

As Chip acknowledged at oral argument, the declaratory judgment he obtained does not shield him if he otherwise violates the no-contest clause while litigating Counts II and III. The trial court's declaratory judgment was limited in scope to the allegations on the face of the complaint. The trial court ruled that those claims, if established, would not violate the no-contest provision. Chip proceeds at his peril if, while litigating those claims on remand, he makes additional arguments or claims beyond those contained in the complaint that violate the no-

---

[4] We therefore express no opinion on whether the trial court's ruling on that point was legally correct.

contest provision. *See Hunter I*, 298 Va. at 435-36 (reserving for remand whether the no-contest provision was triggered by an argument that Chip made on brief but not in the complaint itself).

### 3. The declaratory-judgment action was not procedural fencing.

Finally, we disagree with Eleanor that Chip's lawsuit amounted to "improper procedural fencing because it deprived [her] of the opportunity to prosecute her Counterclaim." Eleanor's counterclaim alleged that Chip violated the no-contest clause by challenging what were, in truth, discretionary distributions, not gifts. As explained above, the declaratory judgment obtained by Chip extends to his claim that the payments were gifts. Eleanor remains free to argue that, in fact, they were not gifts. It was not "procedural fencing" for Chip to seek a declaratory judgment that the complaint, as framed, would not trigger the no-contest clause. Rather, Chip and the trial court simply abided by the alternative-pleading model expressly approved in *Hunter I*, 298 Va. at 429.

### CONCLUSION

Given the actual controversy between the parties, the trial court properly exercised its authority to adjudicate the declaratory judgment requested in Count I of Chip's complaint. And the court committed no reversible error in declaring that Counts II and III of the complaint, as framed, do not violate the no-contest provision. We remand this case for further proceedings consistent with this opinion.

*Affirmed and remanded.*